IN THE UNITED STATES DISTRICT COURT
FOR THE NORHTERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

MARK TOWNSEND and JoBETH TOWNSED, )
BY AN THROUGH HER DADDY, MARK )
TOWNSEND, )
                    PLAITNIFF(S) )    Civil Action No.:
)
VS )    CV-01-J-0864-NW
)
JONATHAN B. LOWE, JERRY JACKSON, )
RAY BOSHELL, AND THE CITY OF )
HALEYVILLE AND ALL IN POWER OF )
IT'S OPERATIONS. )

## COMPLAINT

This Action

     Brought under Amendment 8 of the United States Constitution "Cruel and Unusual Punishments" and the 14th Amendment of the United States Constitution under Due Process of Citizens Rights and all other rights a citizen of the United States is granted by the Constitution of Alabama and the United States.

     The Plaintiff's therefore complaining of the failure of defendants to respect and grant the plaintiff's:

A.    Their rights of appeal process and due process rights to the end,

B.    Plaintiff's legal representation

C.    Daughter, JoBeth's common needs,

D.    And most of all the defendant's took the law into their own hands and made the law become barbaric to please defendants own self-belief and venomous revenge against plaintiff that are shown in statement of facts.

## JURISDICTION

The Court has jurisdiction over this action pursuant to the United States Constitution under Amendments 8 and 14 as plaintiffs claim arise under Federal Law and United States Constitution.

## PARTIES

This action is brought by plaintiff Mark Townsend and also who is the father of JoBeth Townsend who the above claim brought the most evil upon.

Defendants are: Jonathan B. Lowe, Municipal Judge of the City of Haleyville, Alabama; Jerry Jackson, City Attorney and City Prosecutor of the City of Haleyville, Alabama; Ray Boshell, Mayor of the City of Haleyville and the City of Haleyville, a Corporation of the State of Alabama.

## STATEMENT OF FACTS

1. August, 1995 the Courts took JoBeth Townsend away from her daddy, Mark Townsend. Mark Townsend had only supervised visitation for one year.

2. December, 1999, the Court gave Mark Townsend full custody of his daughter, JoBeth Townsend, with whom she still resides with now.

3. Jonathan Lowe of the law firm of Lowe, Mobley and Lowe have had many lawsuits against plaintiff Mark Townsend.

    a. Mark Townsend was a member of the Haleyville Industrial Board where a suit to remove Mark Townsend from the Industrial Board because of the problem of Mr. Lowe being the Chairman of the Industrial board and also the attorney for the Industrial Board.

    b. The law firm of Lowe, Mobley and Lowe were involved also with the divorce case that took the daughter away from plaintiff Mark Townsend.

    c. Alabama Code of Judicial Ethics Cannon (3)c (Disqualification) Jonathan B. Lowe should have never been involved in any part as Municipal Judge against plaintiff.

4. Jerry Jackson was attorney for plaintiff's ex-wife in custody battle of plaintiff's daughter, JoBeth. Jerry Jackson was also City Prosecutor in a criminal case filed by plaintiff's ex-wife's mother against plaintiff. Jerry Jackson also represented Peerless Land Field Company in a case that plaintiff Mark Townsend was involved in stopping the contracts between the City of Haleyville and Peerless resulting in costing Jerry Jackson much money

5. Ray Boshell was Mayor of Haleyville from 1996 to 2000.

## BRIEF HISTORY

A. In 1996 Robert Aderholt was City Judge of the City of Haleyville.

B. 1996 Nancy Bently took out warrant for the arrest of her ex-son-in-law "Mark Townsend" for 3rd degree assault she alleged took place in her ex-son-in-law's house.

C. In 1996 Robert Aderholt was elected to U.S. Congress. Therefore Robert Aderholt recused himself from the case involving Mark Townsend.

D. A fill-in Judge "Mike Terry" heard the case and found Mark Townsend, guilty.

E. Plaintiff, Mark Townsend did NOT have custody of daughter at the time of court in "1996".

3

F. Three days after the trial of Mark Townsend, he went to the then Mayor Ray Boshell to ask questions about Judge Terry. Ray Boshell said he did not know anything about Judge Terry.

G. Mayor Ray Boshell repeated at a City Council meeting that he did not appoint Mike Terry". This is recorded in the minutes.

H. January 2, 1997, Mark Townsend made a Motion For New Trial based on Judge Terry had not been appointed by the Mayor according to Alabama Law. Code of Ala Section 12-14-34 sets forth the requirements for ~~action~~ ACTING Municipal Judges. It states the Mayor of the municipality only can appoint an acting Judge.

I. Mark Townsend also asked for all cases heard by acting Judges who were not appointed by the Mayor to be void. January 1997.

J. February 6, 1997. Mayor Ray Boshell met with Mark Townsed and said your case is over because the Mayor before him had not appointed any of the fill-in Judges. Therefore now Congressman Aderholts cases as a municipal Judge might be void for lack of jurisdiction.

K. Mark Townsend thought the case was over.

L. October 6, 1997, Mark Townsend was chosen to be an Honor Captain at a local high school football game. Before the game began, a warrant for the arrest was served and plaintiff was told to begin his jail sentence on weekends for 20 days.

M. Plaintiff called Circuit Judge Bobby Aderholt and he dismissed the warrant until plaintiff had time to get counsel.

N. This case made it's way to the Alabama Court of Criminal Appeals which was dismissed on March 26, 1999. The Court ruled that plaintiff did not have rights to file for new trial in City Court.

O. The plaintiff's strongly disagreed with the Alabama Court of Criminal Appeals and was preparing his appeal to the Alabama Supreme Court. Alabama Court of Criminal Procedure 24.5 sets out the specific or the A-B-C's of how to file for new trial in City Court.

P. The plaintiff could not believe the Honorable Judges of Alabama Court of Criminal Appeals could not agree with 24.5

Q. Please note Exhibit "A". This is a letter from Jerry Jackson "City Prosecutor" to the City of Haleyville and Mark Townsend. Note the date is March 26, 1999. The letter states that Mark Townsend has 14 days to file to the Alabama Supreme Court.

R. Please note Exhibit "B". That Judge Terry's Order was for Mark Townsend to serve 20 days on weekends.

S. Please note Exhibit "C". Mark Townsend on April 2, 1999 made a Motion for the Haleyville jail to be closed and for the City of Haleyville to come up to Federal Guidelines.

T. Please note Exhibit "D". Mark Townsend appeared at a City Council Meeting on April 6, 1999 and presented the Mayor and Council with a resolution to change To Federal Court.

U. April 6, 1999 at the City Council meeting the City of Haleyville arrested and put in jail Mark Townsend.

    a. Mark Townsend's ten year old daughter was at the softball field.

5

b. Mark Townsend was not allowed to make arrangements for her to be picked up.

c. Mark Townsend was not allowed to finish his Pro Se case in federal Court or Alabama Supreme Court even though he had until April 10, 1999 to file.

d. Mark Townsend's father was told not to get involved or the sentence would go from 20 days to one year.

e. Many things happened to plaintiff while in jail from the spreading of lice, hepatitis, and many more that the plaintiff would like to present at an oral arguments to this Court. But NOTHING is to be compared to the jailer letting plaintiff's ten year old daughter come in to the jail area to see her daddy behind bars.

f. Plaintiff's cell was sprayed for bugs while he was in his cell.

g. Please note Exhibit "E". This is a news story interview by Chad Fell of the Northwest Alabamian to Mark Townsend and Haleyville Chief of Police, Kyle Reogas.

h. Plaintiff considers Chief Reogas a friend, then and now.

i. Chief Reogas is prepared to testify that the much evil brought on Mark Townsend in jail was due to Jerry Jackson who again was using this to try to win back custody of plaintiff's daughter to his client.

j. Judge Jonathan Lowe recused himself in the beginning of this case and later brought himself back into the case to deny Mark Townsend his right to Appeal to the Alabama Supreme Court and to file in federal court. Judge Lowe di dnot allow the weekend time served and order

straight 20 days. This placed very much harm to the plaintiff's daughter, JoBeth Townsend.

k. Governor Don Siegelman appointed Ed Townsend (cousin of plaintiff) as Sheriff of Winston County to replace David Sutherland. Sheriff Townsend asked a for a grand jury investigation on all jails in Winston County which Haleyville is in.

WHEREFORE, the above premises considered, plaintiff prays that this Honorable Court order the Haleyville City jail up to federal guidelines so no diseases are transported to law enforcement personnel or their families or any prisinor that might carry diseases in to the public school. Second, to award plaintiff's compensatory and punitive damages for $2,000.000.00 (Two Million Dollars). Third, issue an aorder where no child is treated like JoBeth Townsend. Fourth, grant plaintiff's such other relief the Court deems fit.

Respectfully submitted this ___6___ day of ___April___, 2001.

Mark Townsend, Pro Se     *Mark Townsend*
1405 28 Street
Haleyville, AL  35565
205 486-4980

7

EX. A

Law Office
Of
## JACKSON & NEWELL
Office:
914 - 19TH STREET
HALEYVILLE, ALABAMA 35565
P. O. BOX 819
HALEYVILLE, ALABAMA 35565-0819

Jerry W. Jackson
Res. 205-486-3799

Michael E. Newell
Res. 205-486-1057

Office: 205-486-3618
Fax.: 205-486-3633
WATS: 1-888-243-2677

March 26, 1999

Mayor Ray Boshell
City of Haleyville
1901 11th Avenue
Haleyville, Alabama 35565

Re: Mark Townsend v. City of Haleyville

Dear Mayor Boshell:

As you are aware, the Court of Criminal Appeals recently dismissed Mark Townsend's appeal. Mark Townsend, by and through his counsel Russell Eason, filed an application for Re-Hearing with said Court. In a memorandum released, March 26, 1999 the Court has overruled Mr. Townsend's Application for Re-Hearing. I have enclosed a copy of said memorandum for your perusal.

Mr. Townsend, if he should elect to do so, can now petition the Supreme Court of Alabama for a Writ of Certiorari in other words, he would be asking the Supreme Court to make sure that the Court of Criminal Appeals applied the law correctly with regard to his case. In order for Mr. Townsend to do so, he will have to file this petition with the Supreme Court of Alabama within fourteen (14) days of the date of the memorandum, March 26, 1999. Should Mr. Townsend fail to do so, at the expiration of the fourteen (14) days, the Municipal Court of the City of Haleyville can order Mr. Townsend to serve his previously imposed sentence.

The next step in the process is Mr. Townsend's, and we shall act accordingly.

If you have any questions, please do not hesitate to contact us.

With kindest personal regards, I am

Sincerely,

Michael E. Newell

MEN/jh

## SUMMONS TO APPEAR

EX. B

Case Number: MC96-00265

Municipality of HALEYVILLE

STATE OF ALABAMA

V.

Mark Townsend

Defendant

In the Municipal Court of The City of Haleyville, Alabama

TO: Mark Townsend (name of defendant):

Probable cause been found on Complaint filed against you in this Court, charging you with the offense(s) of: Assault 3rd

It appearing that the offense charged is bailable as a matter of right, and there further appearing no reason to believe that you will not appear as required in response to this Summons.

YOU ARE THEREFORE ORDERED TO APPEAR IN PERSON ~~BEFORE THIS COURT~~ AS FOLLOWS:

PLACE: Haleyville City Jail

DATE AND TIME: July 10, at 6:00 pm to serve 48 hrs.

( ) Check and complete if applicable  Each weekend after, until a total of 20 days

YOU ARE ALSO ORDERED TO APPEAR AS FOLLOWS: have been served.

OFFICE: _____

LOCATED AT: _____

DATE AND TIME: _____

FOR THE PURPOSE(S) OF: _____ (PHOTOGRAPHING/FINGERPRINTING)

If you fail to appear as ordered herein, or if there appears to be reasonable cause to believe that you will fail to appear, an Arrest Warrant shall be issued for your arrest. Your appearance or failure to appear may be taken into consideration by the Court in any consideration of conditions of release (bail), probation, or suspension of sentence in your case.

DATE: 7/8/98

Sue Southern
Judge/Magistrate

### RETURN OF SERVICE

( ) Return receipt of certified mail received in this office on _____ Date

(X) I certify that I personally delivered copy ( ) of the Summons to Appear to Mark Townsend in Marion County, Alabama on 7/8/98 Date

Date: 7/8/98

Server's Signature: R.C. Todd

Title: Lt. police dept.

Rule 3

MPCI HMC 10

IN THE MUNICIPAL COURT OF HALEYVILLE, ALABAMA

| | |
|---|---|
| MARK TOWNSEND, | ) |
| Plaintiff, | ) |
| v. | ) CASE NUMBER: |
| CITY OF HALEYVILLE, | ) |
| Defendant. | ) |

## MOTION TO RELEASE ALL CITY PRISONERS

Comes now, Mark Townsend, to make his Motion to release all city prisoners form the City Jail until it complies with all State and Federal Laws and as grounds therefor states as follows:

1. The Plaintiff avers that the City of Haleyville jail does not procure bibles for inmates in accordance with 14-2-46 of the Code of Alabama.

2. The Plaintiff avers that the City of Haleyville jail does not provide Federal Law Books to inmates who are pro se in their defense in accordance with the 14th Amendment to Constitution of the United States of America.

3. The Plaintiff avers that the City of Haleyville jail does not have guards or jailer who have taken the oath of office in accordance with 14-3-13, Code of Alabama.

4. Plaintiff avers that the City of Haleyville jail cannot show records of inspection by Grand Jury or Board of Corrections. Further, such repairs could deem necessary a new building (see 14-6-82 Code of Alabama).

5. Plaintiff avers that the City of Haleyville jail cannot show records of fumigation and painting of jail sells twice a year, which could be the contributing factor to some inmates having lice (see 14-6-92 Code of Alabama).

6. Plaintiff avers that the City of Haleyville jails shows signs of lead paint in cells (see 14-6-92 Code of Alabama).

7. Plaintiff avers that the City of Haleyville jails shows no record of or future plans for separate bathing facilities for males and females, in accordance with 14-6-93 Code



of Alabama.

8. Plaintiff avers that the City of Haleyville jail shows no record of providing a medical doctor in accordance with 14-6-20 and 14-6-19, Code of Alabama.

9. Plaintiff avers that the bedding located within the City of Haleyville jail shows signs of stains from urine in violation of 14-6-19, Code of Alabama.

10. Plaintiff avers that the City of Haleyville jail shows records of suicide by inmates, who were not watched by full time, twenty-four hour, male and female jailers, in violation of 14-6-19 and 14-3-42, Code of Alabama.

WHEREFORE, Plaintiff prays that the this Honorable Court will grant this Motion to release all city prisoners and close the City of Haleyville jail until all State and Federal laws are enforced.

_____
MARK TOWNSEND, pro se
1618 GODDARD ROAD
BEAR CREEK, ALABAMA  35543


## ORDER

Upon consideration of the Motion to Release all Prisoners from the City of Haleyville Jail, this Honorable Court is of the opinion that said Motion should be GRANTED, it is, therefore, ORDERED, ADJUDGED AND DECREED, THAT ALL PRISONERS OF THE CITY OF HALEYVILLE JAIL SHALL BE RELEASED, PENDING COMPLIANCE WITH ALL STATE AND FEDERAL REGULATIONS,

Done this the _____ day of _____, 1999.

_____
JONATHAN B. LOWE
MUNICIPAL JUDGE

## RESOLUTION

WHEREAS, an action in the Municipal Court of the City of Haleyville, Alabama, styled, <u>Municipality of Haleyville, v. Mark Townsend,</u> Case number MC 96-00265, the Defendant was convicted of assault,

WHEREAS, the above case is presently on appeal to the Court of Criminal Appeals, with time remaining until April 8, 1999 for the question of jurisdiction to be presented before the Supreme Court of Alabama, and,

WHEREAS, Defendant, Mark Townsend, wishes a Federal Court review of questions of Municipal Court Judge Terry's appointment and jurisdiction of Court which convicted him,

THEREFORE, BE IT RESOLVED, that the below signed members of the City Council of the City of Haleyville, Alabama, do hereby grant a suspension of execution of sentence in the present case to allow question of court jurisdiction to be addressed by Federal Court.

DONE THIS THE _____ DAY OF _____, 1999.

_____   _____
JOHNNIE VEAL                         BOB MASDON

_____   _____
WALLACE GEORGE                       RICHARD LOWE

_____   _____
JIMMY ELLIOTT                        RAY BOSHELL

EX. E
1 OF 2 P6

# Townsend, Police Chief Reogas address city jail issues

**By Chad Fell**
*Staff Writer*

HALEYVILLE - After Bear Creek resident Mark Townsend claimed unsanitary conditions at the city jail, Haleyville police chief Kyle Reogas addressed those conditions in an interview Wednesday.

Townsend, who was released Monday from jail after serving a 20-day sentence on assault charges, claims he saw many unsanitary conditions at the jail during his stay. He said all of the issues were addressed in a motion he filed in municipal court.

The motion called for the dismissal of city jail prisoners based on allegations of lice and other unsanitary conditions. The motion, however, was dismissed by municipal judge Jonathan Lowe, acting on a request by city prosecutor Mike Newell.

Townsend told the *Alabamian* after being released from jail Monday that his number one concern was the long-term effects on people placed in the jail.

He cited unsanitary conditions of certain jail inmates, including what one prisoner claimed was Hepatitis C and a separate incident in which one prisoner was confirmed to have scabies--a contagious skin lice condition.

Townsend also claimed that the jail should have a full-time jailer, since the present responsibility is placed upon dispatchers on duty.

"It's not necessarily what a city likes to hear, but a city has the responsibility of inmates....", Townsend said.

He added another incident which brought the biggest hardship on him of any experience during his jail term was when his daughter Jo Beth was allowed to come and see her dad in his jail cell.

"My daughter walked right into an unattended jail and saw me behind bars," he said. "This broke her heart, and it broke my heart...She had to seek counseling at school."

Reogas responded that allowing the minor to visit the jail cell was a mistake made by the on-duty officer and assured that it would not happen again.

Townsend also cited filthy mattresses which contained stains of blood and urine.

"I made two phone calls to the health department to condemn the mattresses," Townsend said, adding the mattresses were removed and new ones ordered.

Chief Reogas pointed out that the mattresses had not been condemned, but new ones had been ordered.

"I was not here the day the health department inspected the jail," Reogas said. "In talking to those who were here and were involved...I was told the mattresses were not condemned, but needed to be replaced.

"It was recommended verbally we try to replace them. I have not seen urine or blood stains on the mattresses. We're, in the process of replacing them," Reogas added that present mattresses are being used until the new ones arrive.

Townsend mentioned the alleged lice conditions that were at the jail while he was incarcerated. "While I was in there, dispatchers and other public officials broke out in scabies (a skin lice condition)," he said.

Townsend also said a 21-year-old man had to share a cell with a inm claimed to have Hepatitis C, fo. there is no vaccination.

"That guy threw up all night long Townsend said. "When they flushed th commode, it would flood my cell next it."

Townsend said that the cells were be disinfected, but he, being the only prison incarcerated at that time, was not allow to leave his cell during the disinfect process.

Reogas responded that the disinfectin process of calling in an extermina occurred as a normal procedure to kill spread of any infectious disease.

"It is true that Mark remained in the area during the exterminating p Reogas said.

"This is one of those things we may l at changing so it won't happ again...Someone said the reason Mark wa not moved was because officers were n available, and no one could move him

• SEE TOWNSEND PAGE 3

Page 2 of E

# Townsend continued from page 1

another area. That may have been the case."

Reogas said that the only way law enforcement know if a prisoner brought in has an infectious disease or virus is if the prisoner volunteers that information.

No policy exists which calls for the law enforcement officers to ask every prisoner or to test every prisoner, because of the great financial costs of testing every prisoner.

Reogas added that certain circumstances would tell if a prisoner would be locked up, if it was learned beforehand that the prisoner had an infectious disease. Those circumstances could be if that prisoner committed a violent crime or posed a public threat, Reogas said.

"We would try not to put (a prisoner with infectious disease) in a cell with another inmate if all possible," he said, adding that a security cell in the rear of the cell block would be the first option to place a prisoner with an infectious disease.

"There was one radio operator seen by a medical doctor and treated for scabies," Reogas confirmed. "I'm not sure how he contracted that, but he was treated and no further problems occurred. We had another dispatcher who asked for and received medical treatment for what he claimed was 'itching all over.' He didn't show the symptoms of it."

Concerning the possible case of Hepatitis C, Reogas said. "We had an inmate who stated he had Hepatitis C. I think that we should have the right to know if you have a contagious disease or disorder that could harm other inmates."

Townsend recalled that once he learned of the other prisoner's claim of having Hepatitis C, he made attempts to get the attention of the on-duty dispatcher by knocking out a plexiglass window with his hand.

During his jail stay, Townsend requested medical treatment twice--1) for Hepatitis C and 2) to see if he had effects of the disinfecting spray.

"I demanded to go see a doctor to see what chemicals were in what I was breathing," Townsend said.

"I think the citizens of Haleyville have no choice but to close their jail for many reasons. Number one, financially they cannot afford to run a federally law update jail," he continued.

Reogas said the city budgets $24,000 annually for jail upkeep. "We have to work with what we have, Reogas said. "That's the position I'm in."

Reogas added the jail ranks number one as far as allocated funds. "We've got some written policies on jail procedures. If necessary, you can have written guidelines that shall be followed concerning certain situations."

Reogas pointed out that he would consider the jail issues and may, along with mayor Ray Boshell, draft some guidelines or procedures.

"I would support the employment of jailers. We have never had jailers. We did the best we could do. I feel like dispatchers/radio operators have done an excellent job without a jailer," Reogas said.

"Where will we get the funds to do it?," Reogas asked, when such a position would cost $16,000 to $18,000 for a year's salary for one jailer; and, with at least five jailers needed to prevent overtime, that cost annually could rise as high as $90,000.

Reogas did say he intends to see the jail meets standards as required by law. "If we can't afford (something), we'll look at another avenue," he said.